# EXHIBIT A

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

| | |
|---|---|
| CHRISTINA TURNER, on behalf of herself, and all others similarly situated, | Case No.: 5:18-cv-66-TBR |
| Plaintiff, | |
| | **CLASS ACTION** |
| v. | |
| PILLPACK, INC. and FLUENT, INC., | Jury Trial Demanded |
| Defendants. | |

**FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO THE TELEPHONE CONSUMER PROTECTION ACT**

**INTRODUCTION**

1. Christina Turner ("Plaintiff") brings this Class Action Complaint and Demand for Jury Trial for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Pillpack, Inc. ("Pillpack") and Fluent, LLC. ("Fluent") (together referred to as "Defendants"), in negligently, and/or willfully contacting Plaintiff through text messages calls on her cellular telephone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227 *et seq.*, ("TCPA"), thereby invading her privacy. Plaintiff alleges as follows upon personal knowledge as to her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**NATURE OF THE ACTION**

2. Defendant Pillpack is an online pharmacy that maintains its corporate headquarters at Commercial Street, Unit 2012, Manchester, NH, 03101.

3. Defendant Fluent is a corporation that works with businesses and runs sweepstakes websites in order to collect contact information of consumers whom it subsequently sends or utilized a third-party vendor to send unsolicited SMS telemarketing text messages. It maintains its corporate headquarters at 33 Whitehall St. FL 15, New York, NY 10004.

4. In a misguided effort to solicit business, Defendants contact who they believe to be potential customers through text messages with automatic telephone dialing equipment.

5. The TCPA strictly forbids nuisance text messages exactly like those alleged in this Complaint – intrusive text messages to private cellular phones, placed to numbers obtained without the prior express consent of the recipients.

6. Defendants violations cause Plaintiff and members of the Class of consumers (defined below) to experience actual harm, including aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited and harassing text message calls, as well as the violation of their statutory rights.

7. Plaintiff and members of the Class suffered a concrete injury in fact, whether tangible or intangible, that is directly traceable to Defendants conduct, and is likely to be redressed by a favorable decision in this action.

8. Plaintiff seeks an injunction stopping Defendants from sending unsolicited text messages, as well as an award of statutory damages under the TCPA, together with costs and reasonable attorneys' fees.

**JURISDICTION AND VENUE**

9. This Court has original jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 because they arise under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute. *Mims v. Arrow Financial Services, LLC*, 132 S.Ct. 740, 751-53 (2012).

10. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff seeks up to $1,500 in damages for each text message in violation of the TCPA, which, when aggregated among a proposed class number in the tens of thousands, exceeds the $5,000,000 threshold for federal court jurisdiction. Further, Plaintiff alleges a national class, which will result in at least one class member belonging to a different state than that of the Defendants, providing jurisdiction under 28 U.S.C. § 1332(d)(2)(A). Therefore, both elements of diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

11. The Court has personal jurisdiction over Defendants and venue is proper in this District because Defendants transact significant amounts of business within this District and because the conduct and events giving rise to the claims occurred in this District.

**PARTIES**

12. Plaintiff Christina Turner is a natural person and a citizen of the State of Kentucky. Plaintiff Turner is, and at all times mentioned herein was, a resident of Paducah, Kentucky. She is, and at all times mentioned herein was a "person" as defined by 47 U.S.C. § 153 (39).

13. Defendant Pillpack is an online pharmacy which resides in Manchester, New Hampshire. Pillpack is a "person" as defined by 47 U.S.C. § 153 (39).

14. Defendant Fluent runs websites which collect phone numbers from individuals who believe they are collecting a prize and selling those phone number to their clients. Fluent resides in New York, New York. Fluent is a "person" as defined by 47 U.S.C. § 153 (39).

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991**

**(TCPA), 47 U.S.C. §§ 227** *et seq.*

15. In 1991, Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227 (TCPA),[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

16. The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.[2] As recognized by the Federal Communication Commission ("FCC") and the Courts, a text message is a call under the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009).

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA). The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. §§ 201 *et seq.*

[2] 47 U.S.C. § 227(b)(1)(A)(iii).

3

17. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[3]

18. One of the most bulk advertising methods employed by companies today involves the use of "Short Message Services" (or "SMS"), which is a system that allows for transmission and receipt of short text messages to and from wireless telephones.

19. SMS text messages are directed to a wireless device through a telephone number assigned to the device. When an SMS text message is successfully transmitted, the recipient's wireless phone alerts the recipient that a message has been received. Because wireless telephones are carried on their owner's person, SMS text message are received virtually anywhere in the world.

20. Unlike more conventional advertisements, SMS message advertisements can actually cost their recipients money because wireless phone users must pay their wireless service providers either for each text message they receive or incur a usage allocation deduction to their text messaging or data plan, regardless of whether the message is authorized.

21. Moreover, the transmission of an unsolicited SMS text message to a cellular device is distracting and aggravating to the recipient; intrudes upon the recipient's seclusion; wastes a quantifiable amount of available data on the recipient's cellular device, thereby reducing its data storage capacity; temporarily reduces the available computing power and application processing speed on the recipient's device; diminishes the available battery power which shortens the battery life; and requires expending a quantifiable amount of energy (electricity) to recoup the battery power lost as a result of receiving such a message.

---

[3] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

22. As of October 16, 2013, express written consent is required to make any such telemarketing calls. The express written consent must be signed and be sufficient to show the consumer received clear and conspicuous disclosure of the significance of providing consent and must further unambiguously agree to receive future phone calls.[4]

23. Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendants to demonstrate that Plaintiffs provided express consent within the meaning of the statute.

24. On July 10, 2015, the FCC released a Declaratory Ruling which clarified that a consumer who had previously provided "express consent" to receive automated calls or text messages has a right to revoke such consent. Under the Declaratory Ruling, consumers can revoke consent using any reasonable method, including orally or in writing, that clearly expresses his or her desire not to receive further calls. However, even before the release of the FCC Order finding that consent to receive a text message could be revoked, the Mobile Marketing Association declared in October 2012 in its *U.S. Consumer Best Practices for Messaging* that "[a] subscriber must be able to stop participating and receiving messages from any program by sending STOP to the short code used for that program . . ." and ". . . if the subscriber sent STOP or STOP ALL to the short code, they are opted out of all programs they were enrolled in on that short code. Moreover, the 2015 FCC Order regarding revocation of consent was upheld by the D.C. Circuit. *See ACA Int'l v. Fed. Commc'ns Comm'n*, No. 15-1211, 2018 WL 1352922, at *1 (D.C. Cir. Mar. 16, 2018) ("We uphold the Commission's approach to revocation of consent, under which a party may revoke her consent through any reasonable means clearly expressing a desire to receive no further messages from the caller.")

**COMMON FACTUAL ALLEGATIONS**

25. Pillpack is online pharmacy who hired Fluent to assist in telemarketing in an attempt to solicit business.

---

[4] *In Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 ¶ 33 (FCC Feb. 15, 2012); *see also Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009); *Gutierrez v. Barclays Grp.*, 2011 WL 579238, at *2 (S.D. Cal. Feb. 9, 2011).

5

26. Fluent uses "drip SMS marketing campaigns" in order to solicit business for its clients. *See* https://www.fluentco.com/resources/sms-marketing-guide/ (last visited January 11, 2019).

27. Drip marketing is a communication strategy that sends automatically, or drips, a pre-written set of messages, including SMS text messages, to customers or prospects over time.

28. However, these SMS messages are often sent without having the necessary prior express written consent required by the TCPA.

*29.* Fluent, on behalf of Pillpack, allows these SMS messages to be sent *via* an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. § 227 (a)(1) and by using "an artificial or prerecorded voice" system as prohibited by 47 U.S.C. § 227 (b)(1)(A), which has the capacity to produce or store numbers randomly or sequentially, and to dial such numbers, to place text message calls to consumers' cellular telephone.

30. The TCPA was intended to give individuals control over how and where they receive calls and text messages. When Defendants place the text message calls to consumers without their consent, it fails to address or respect the limitations imposed by the TCPA. In doing so, it takes control away from the consumers and violates both the spirit and the letter of the TCPA.

## FACTS SPECIFIC TO PLAINTIFF TURNER

31. On October 26, 2017, Plaintiff Turner received a SMS telemarketing text message from Defendants to her wireless phone ending in the number 2221, for which Plaintiff provided no consent to call or text, in an attempt to solicit her business.

32. Specially, the text message received by Plaintiff Turner stated "Christina get your medication, packaged by the dose and shipped directly to your door for Free, every month. When can you talk to learn more?"

33. The incoming SMS text message from Defendants received by Plaintiff Turner emanate from the number 774-500-1072.

34. As Ms. Turner did not recognize the number from whom the SMS text was sent and had no previous business dealings or relationship with any entities offering prescription mail services, she responded to the SMS text with "Who is this?"

35. Ms. Turner subsequently received a second SMS text stating, "This is PillPack. We're here to help you save time by delivering your medication straight to your door. What's a good time to talk?"

36. Ms. Turner responded by stating "Never."

37. The unsolicited telemarketing text messages placed to Plaintiff Turner's wireless telephone were placed *via* an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. § 227 (a)(1) and by using "an artificial or prerecorded voice" system as prohibited by 47 U.S.C. § 227 (b)(1)(A), which had the capacity to produce or store numbers randomly or sequentially, and to dial such numbers, to place text message calls to Plaintiff Turner's cellular telephone.

38. The telephone number that Defendants, or their agents, called was assigned to a cellular telephone service for which Plaintiff Turner incurred a charge for incoming calls pursuant to 47 U.S.C. § 227 (b)(1).

39. These SMS text messages constitute calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

40. Plaintiff Turner did not provide Defendants or their agents prior express consent or prior express written consent to receive unsolicited text message calls pursuant to 47 U.S.C. § 227 (b)(1)(A).

41. These SMS text messages by Defendants or their agents therefore violated 47 U.S.C. § 227(b)(1).

42. The FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

43. The FCC confirmed this principle in a declaratory ruling holding that business such as Pillpack may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because sellers may have thousands of independent marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote omitted) (alteration marks and internal quotation marks omitted).

44. More specifically, *Dish* held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id*. at 6586 ¶ 34. Federal common law principles of ratification also permit a finding of vicarious liability. *Id*. at 6584.

## CLASS ACTION ALLEGATIONS

45. Plaintiff bring this action pursuant to Federal Rule of Civil Procedure 23(b)(3) on behalf of herself and a class of similarly situated individuals ("the Class") defined as follows:

> All persons in the United States who: (1) were sent a text message call placed by Defendants or their agents; (2) on his or her cellular telephone number; (3) through the use of any automatic telephone dialing system or artificial or pre-recorded voice system as set forth in 47 U.S.C. § 227(b)(1)(A)(3); (4) without consent; (5) from four year prior to the filing of the initial complaint through the filing of Final Approval.

46. Defendants and their employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believe the Class members are in the hundreds of thousands, if not more. Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

47. Plaintiff and members of the Class were harmed by the acts of Defendants in at least the following ways: Defendants, either directly or through their agents, illegally contacted Plaintiff and the Class members *via* their cellular telephones by using unsolicited text message calls, thereby causing Plaintiff and the Class members to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiff and the Class members previously paid, and invading the privacy of said Plaintiff and the Class members. Plaintiff and the Class members were damaged thereby.

48. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of the Class and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

49. The joinder of the Class members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the Court. The Class can be identified through Defendants' records or Defendants' agents' records.

50. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact to the Class predominate over questions which may affect individual Class members, including the following:

    a. Whether, between four year prior to the filing of the initial Complaint to the disposition of this case, Defendants or their agents placed text message calls without the recipients' prior express consent (other than a text message call made for emergency purposes or made with the prior express consent of the called party) to a Class member using any automatic telephone dialing system

or an artificial or pre-recorded voice system, to any telephone number assigned to a cellular telephone service;

b. Whether the equipment Defendants, or their agents, used to make the text message calls in question was an automatic telephone dialing system as contemplated by the TCPA;

c. Whether Defendants, or their agents, text message calls can be considered an artificial or pre-recorded voice;

d. Whether Defendants, or their agents, systematically made text message calls to persons who did not previously provide Defendants with their prior express consent to receive such text message calls;

e. Whether Plaintiff and the Class members were damaged thereby, and the extent of damages for such violation; and

f. Whether Defendants and their agents should be enjoined from engaging in such conduct in the future.

51. As a person that received at least one unsolicited text message call to her cell phone without her prior express written consent, Plaintiff is asserting claims that are typical of the Class. Plaintiff will fairly and adequately represent and protect the interests of the Class in that Plaintiff has no interest antagonistic to any member of the Class.

52. Plaintiff and the members of the Class have all suffered irreparable harm as a result of the Defendants' unlawful and wrongful conduct. Absent a class action, the Class will continue to face the potential for irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendants will likely continue such illegal conduct. Because of the size of the individual Class member's claims, few, if any, Class members could afford to individually seek legal redress for the wrongs complained of herein.

53. Plaintiff has retained counsel experienced in handling class action claims and claims involving violations of the Telephone Consumer Protection Act.

54. A class action is a superior method for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. Class-wide damages are essential to

induce Defendants to comply with federal law. The interest of Class members in individually controlling the prosecution of separate claims against Defendants is small because the maximum statutory damages in an individual action for violation of privacy are minimal, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured by prosecuting Plaintiff's claims as a class action.

55. Defendants have acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

**FIRST CAUSE OF ACTION**
**NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT**
**47 U.S.C. §§ 227 *ET SEQ.***

56. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

57. Defendants made unauthorized automated text message calls using an automatic telephone dialing system or prerecorded voice to the cellular telephone numbers of Plaintiff and other members of the Class without the prior express written consent.

58. These text message calls were made *en masse* using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers. By using such equipment, Defendants were able to send thousands of text messages simultaneously to

thousands of consumers' cellphones without human intervention. These text messages are analogous to a prerecorded voice made without the prior express consent of Plaintiff.

59. The foregoing acts and omissions of Defendants and their agents constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

60. As a result of Defendants', and Defendants' agents', negligent violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

61. Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## SECOND CAUSE OF ACTION
## KNOWING AND/OR WILLFUL VIOLATIONS OF THE
## TELEPHONE CONSUMER PROTECTION ACT
## 47 U.S.C. §§ 227 *ET SEQ.*

62. Plaintiff incorporates by reference paragraphs 1-55 of this Complaint as though fully stated herein.

63. Defendants made unauthorized automated text message calls using an automatic telephone dialing system or prerecorded voice to the cellular telephone numbers of Plaintiff and other members of the Class without the prior express written consent.

64. These text message calls were made *en masse* using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers. By using such equipment, Defendants were able to send thousands of text messages simultaneously to thousands of consumers' cellphones without human intervention. These text messages are analogous to a prerecorded voice made without the prior express consent of Plaintiff.

65. The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. §§ 227 *et seq.*

66. As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and the Class are entitled to treble damages, as provided by statute, up to

$1,500.00, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

67. Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

**PRAYER FOR RELIEF**

**Wherefore**, Plaintiff respectfully requests the Court to grant Plaintiff and the Class members the following relief against Defendants:

**FIRST CAUSE OF ACTION FOR NEGLIGENT VIOLATION OF THE TCPA, 47 U.S.C. §§ 227 *ET SEQ.***

68. As a result of Defendants', and Defendants' agents', negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for themselves and each Class member $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

69. Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

70. Any other relief the Court may deem just and proper.

**SECOND CAUSE OF ACTION FOR KNOWING AND/OR WILLFUL VIOLATION OF THE TCPA, 47 U.S.C. §§ 227 *ET SEQ.***

71. As a result of Defendants', and Defendants' agents', willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for themselves and each Class member treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

72. Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future.

73. Any other relief the Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: January 14, 2019

*/s/ Alexis M. Wood*

**LAW OFFICES OF RONALD A. MARRON**
Ronald A. Marron (pro hac vice)
Alexis M. Wood (pro hac vice)
alexis@consumersadvocates.com
Kas L. Gallucci (pro have vice)
kas@consumersadvocates.com
651 Arroyo Drive
San Diego, CA  92103
Tel: (619) 696-9006
Fax: (619) 564-6665

*Attorneys for Plaintiff and the
Proposed Class*