UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:18-CV-66-TBR

CHRISTINA TURNER, on behalf of herself,                  PLAINTIFF
and all others similarly situated

v.

PILLPACK, INC.                                                           DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon two motions by Defendant, PillPack, Inc. ("PillPack"), and one motion by Plaintiff, Christina Turner ("Turner"). Turner moves the Court for leave to amend her complaint. (R. 28). PillPack moves the Court to compel arbitration and stay litigation. (R. 34). PillPack also moves the Court to strike or otherwise disregard portions of two exhibits filed by Turner. (R. 43). All three motions are fully briefed and ripe for review. For the following reasons, and being otherwise sufficiently informed, the Court finds that whether Turner assented to the alleged arbitration agreement is "in issue" and therefore the Court shall proceed to a trial to resolve the question pursuant to 9 U.S.C. § 4. *See Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) ("If the validity of the agreement to arbitrate is "in issue," the court must proceed to a trial to resolve the question"). Because this is a threshold determination, all other litigation in this case is stayed pending the outcome of the trial. Discovery shall only be allowed on the issue of whether Turner entered into an arbitration agreement.

# BACKGROUND[1]

Christina Turner, a resident of Paducah, Kentucky, brings this action on behalf of herself and all others similarly situated and claims that PillPack negligently and/or willfully contacted her through text messages on her cellular telephone, in violation of the Telephone Consumer Protection Act. (R. 1). PillPack is a pharmacy business with its place of business located in Manchester, New Hampshire. (R. 16). In addition to Turner and PillPack, three other entities are relevant to this matter although they are not currently parties to the litigation: Fluent, Inc., Fluent, LLC, and RewardZone USA, LLC ("RZU"). According to Daniel Barsky, General Counsel of Fluent, Inc. and its wholly owned subsidiaries,

> Fluent, Inc. is a digital marketing company that owns and operates numerous consumer-facing websites ("Websites") through its wholly owned subsidiaries, including Fluent, LLC and RewardZone USA, LLC. The Websites offer users the opportunity to, for example, earn rewards, enter sweepstakes, receive lists of jobs, and get product samples. Fluent, Inc. and its wholly owned subsidiaries operate the Wesites as one combined entity ("Fluent").

(R. 34-3). Turner moves the Court for leave to amend her class action complaint to add Fluent, LLC to the action.

PillPack claims that Turner has agreed to arbitrate her claims. (R. 34). More specifically, PillPack alleges that Turner registered online to participate in a rewards program operated by Fluent, Inc. through its wholly owned subsidiaries Fluent, LLC and RZU and that Turner agreed to a mandatory arbitration provision as a necessary step of the registration process. (R 34-1). PillPack argues that Turner visited a reward website, www.consumersrvyvnter.com, on June 6, 2016, where she registered for the RZU promotion. *Id.* at 10. As part of this registration process,

---

[1] The Court will discuss the most pertinent facts in greater detail in the "Discussion" section, below.

PillPack alleges that Turner manifested assent to terms and conditions through a "click-wrap" agreement containing the following provision:

> We (RewardZone USA, LLC) operate RewardZoneUSA.com, NationalConsumerCenter.com and other websites (Websites) where you can qualify to earn incentives – merchandise or gift cards (Incentives) – by completing certain offers (Promotions).

*Id.* at 12. The Terms and Conditions also allegedly included an arbitration provision, which included the following language:

> **Arbitration/Dispute Resolution:**
>
> If you have a dispute concerning any aspect of these Terms & Conditions, the Website, your participation in a Promotion, or entitlement to an Incentive, you should first contact customer support on our website or by completing a customer support ticket. We will attempt to resolve the matter to your satisfaction within thirty (30) days of our receipt of a customer support ticket. We may choose to provide you with a final written settlement offer during this process. If we provide you with a final written settlement offer and you don't accept it, or we can't otherwise satisfactorily resolve your dispute or you chose to skip this step, you can submit your dispute for resolution by arbitration before the American Arbitration Association ("AAA") in the county where you live by filing a separate Demand for Arbitration online by following the instructions at https://apps.adr.org/webfile/. You will need our mailing address to file online which is: RewardZone USA, LLC, 128 Court Street, 3rd Floor, White Plains, NY 10601; Fax: 646-607-1910.
>
> If we have a dispute, we will submit our dispute for resolution by arbitration before the AAA in New York, NY. *If either party files for arbitration, it will be conducted in accordance with the then current AAA Commercial Arbitration Rules. The arbitrator will have exclusive authority to resolve any dispute including any claim that all or any part of the Terns & Conditions, including this provision, are unenforceable.*

(R. 34-3 at 3-4) (emphasis added). The alleged arbitration provision also advised that "[y]ou may opt-out of these Dispute Resolution Provisions by providing written notice of your decision within thirty (30) days of the date that you first register on our Website." *Id.* PillPack argues that Turner did not elect to opt-out of the arbitration agreement at any time. (R. 34-1 at 14).

3

Turner denies that she ever typed www.consumersrvycnter.com into a web browser, denies ever entering a promotion or sweepstake to win a Michael Kors bag, and affirmatively states that she has never received a Michael kors bag from Fluent LLC or RZU. (R. 39).

## LEGAL STANDARD

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16, "embodies [a] national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." *Richmond Health Facilities v. Nichols*, 811 F.3d 192, 195 (6th Cir. 2016) (quoting *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007)). Under the Act, a written agreement to arbitrate disputes arising out of a contract or transaction "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. There are "two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983).

Before granting a stay under 9 U.S.C. § 3, the Court "must engage in a limited review to determine whether the dispute is arbitrable," meaning "[1] that a valid agreement to arbitrate exists between the parties and [2] that the specific dispute falls within the substantive scope of the agreement." *Richmond Health Facilities*, 811 F.3d at 195 (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)); *see also Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004). In performing its task, the Court approaches factual questions as it would at the summary judgment stage. *See Simons*, 288 F.3d at 889; *Yaroma v. Cashcall, Inc.*, 130 F. Supp. 3d 1055, 1062 (E.D. Ky. 2015). If the Court is satisfied that the parties formed a valid

agreement to arbitrate, it must stay litigation involving such a dispute until the parties resolve it in the contracted-for manner. *See* 9 U.S.C. § 3. If there are disputed questions of fact concerning the formation of such an agreement, then the Court should hold an evidentiary hearing to resolve the question. *See Todd v. Oppenheimer & Co.*, 78 F.R.D. 415, 425 (S.D.N.Y. 1978); *Marshall v. Green Giant Co.*, No. 4-83-578, 1985 WL 2458, at *2–3 (D. Minn. Aug. 7, 1985); *cf. Commerce Park at DFW Freeport v. Mardian Constr. Co.*, 729 F.2d 334, 340 (5th Cir. 1984) (holding no evidentiary hearing to be necessary in the absence of "disputed factual questions going to the legal issue of arbitrability").

Section 4 of the FAA provides the procedure that district courts must follow when presented with a petition to compel arbitration. In relevant part, Section 4 provides:

> A party aggrieved by the . . . refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof.

9 U.S.C. § 4. "Thus, '[w]hen asked by a party to compel arbitration under a contract, a federal court must determine whether the parties have agreed to arbitrate the dispute at issue.'" *Simons*, 288 F.3d at 889 (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)). If the court determines that the arbitration agreement is not "in issue" then the court must compel arbitration. But "[i]f the validity of the agreement to arbitrate is 'in issue,' the court must proceed to a trial to resolve the question." *Id.* (citing 9 U.S.C. § 4). Like the Court's analysis under Section 3, the Court approaches factual questions as it would at the summary judgment stage. *Id.*

**DISCUSSION**

Because PillPack's motion to compel arbitration presents a threshold issue, the Court shall address that motion before addressing any other aspect of this litigation—including Turner's motion to amend her complaint. *See Tassy v. Lindsay Entm't., Inc.*, No. 3:16-CV-00077-TBR, 2018 WL 1702335 (W.D. Ky. April 6, 2018) (citing *PCH Mut. Ins. Co. v. Cas. & Sur. Inc.*, 569 F. Supp. 2d 67, 78 (D.D.C. 2008) ("[T]he Federal Arbitration Act requires that the Court resolve the threshold issue of whether the parties agreed to mandatory arbitration before the litigation of this matter can continue.")). Turner claims that PillPack negligently and/or willfully contacted her through text messages on her cellular telephone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227 *et seq.*, ("TCPA"), thereby invading her privacy. (R. 1). PillPack argues that Turner agreed to arbitrate her claims when she registered to participate in an online promotion provided by RZU and/or Fluent. (R. 34). Turner responds that she did not enter into an agreement to arbitrate her claims and, even if she had entered into such an agreement, PillPack cannot enforce it against her. (R. 39).

The Federal Arbitration Act provides:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. "Under the Act, arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S.Ct. 524, 529 (2019) (citing *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). However, "before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement *exists*." *Id.* at 530 (citing 9 U.S.C. § 2) (emphasis added).

Because there is a genuine dispute of fact regarding whether Turner entered into an arbitration agreement, this Court cannot compel arbitration at this time. "Arbitration is strictly a matter of consent . . . and thus is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration." *Granite Rock Co. v. Teamsters*, 561 U.S. 287, 299 (2010) (quotation marks and citations omitted) (emphasis in original). Therefore, "courts should order arbitration of a dispute only where the court is satisfied that *neither the formation* of the parties' arbitration agreement *nor* (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue." *Id.* (emphasis added); *See also Dedon GmbH v. Janus et Cie*, 411 F.App'x 361, 363 (2d. Cir. 2011) ("*Granite Rock* reconfirms this circuit's well-established precedent that where a party challenges the very existence of the contract containing an arbitration clause, a court cannot compel arbitration without first resolving the issue of the contract's existence.") (citations omitted). Thus, this Court cannot compel Turner to arbitrate her claims without first determining that an agreement to arbitrate exists. In performing its task, the Court approaches factual questions as it would at the summary judgment stage. *See Simon*, 288 F.3d at 889. Under Kentucky law, "the party seeking to enforce an agreement has the burden of establishing its existence. . . ." *Louisville Peterbilt, Inc. v. Cox*, 132 S.W.3d 850, 857 (Ky. 2004).[2]

PillPack alleges that Turner entered into the arbitration agreement when she visited a reward website and signed up to participate in a RZU promotion on June 6, 2016. (R. 34-1 at 20). The promotion that Turner allegedly participated in displays the following headline: "Monday's EXCLUSIVE Offer . . . Collect 100 points & ger a Michael Kors Designer Bag, $500." (R. 34-4

---

[2] Neither party disputes that Kentucky law governs the alleged formation of the arbitration agreement in this case. (R. 34-1 at 19 n. 3; R. 39 at 18-19).

at 3). The promotion website has fields for the user to input personal information and the following statement: "I understand and agree to the Terms & Conditions which includes mandatory arbitration and privacy policy." *Id.* A user can read the terms of the agreement by clicking on the "Terms & Conditions" hyperlink. (R. 34-1 at 20). Immediately below this sentence, is a large button labeled "Continue >>". (R. 34-4 at 3). PillPack alleges that Turner occupied the fields with her personal information and then clicked the "Continue >>" button on June 6, 2016 thereby assenting to the arbitration agreement contained in the Terms & Conditions. *Id.*

Turner denies ever entering into a promotion or sweepstake to win a Michael Kors bag. (R. 39-1 at 2). Furthermore, Turner disputes the veracity of PillPack's evidence. Turner argues that the "IP address" that PillPack relies on to link Turner to the website visits is suspect. (R. 39 at 20). Turner argues "Fluent has only produced a suspect IP Address that according to its declarant originated from either Nashville, Tennessee or Paducah, Kentucky" and that although "[i]t is common knowledge that IP Addresses are fluid and change based on device and location" "Fluent claims it obtained same IP address from two different website visits, despite [Turner] allegedly providing two different [home addresses]." *Id.* Finally, Turner alleges that PillPack has additional information in the form of "meta-data" that could clarify the issue. *Id.*

PillPack has provided the affidavit of a Fluent employee who claims Turner entered into the Michael Kors Bag promotion. Turner has provided a declaration in which she denies entering into the Michael Kors Bag promotion. Thus, there is a genuine dispute of fact regarding whether Turner entered into the Michael Kors promotion and thereby entered into an arbitration agreement. Because PillPack has not met its initial burden of establishing the existence of an arbitration agreement, the Court cannot compel arbitration at this time. Instead, the Court finds that whether Turner assented to the alleged arbitration agreement is "in issue" and therefore the Court shall

proceed to a trial to resolve the question pursuant to 9 U.S.C. § 4. *See Simons*, 288 F.3d at 889 ("If the validity of the agreement to arbitrate is "in issue," the court must proceed to a trial to resolve the question"). At trial, the burden will be on PillPack to prove the existence of a contract by a preponderance of the evidence. *Cox*, 132 S.W.3d at 857.

The only issue that will be decided at the jury trial is whether Turner entered into the arbitration agreement.[3] If the jury finds that Turner did not enter into an arbitration agreement, then this Court cannot compel her to arbitrate her claims. If the jury finds that Turner did enter into the arbitration agreement, on the other hand, then the Court must enforce the "Delegation Clause" contained in the alleged agreement.[4]

A Delegation Clause is an agreement whereby the parties to a contract agree to arbitrate the arbitrability of any dispute arising out of the contract. In other words, parties may "agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Henry Schein*, 139 S.Ct. at 527 (citing *Rent-A-Center*, 561 U.S. at 68-70). In this case, the alleged arbitration agreement contains the following language:

> If either party files for arbitration, it will be conducted in accordance with the then current AAA Commercial Arbitration Rules. The arbitrator will have exclusive authority to resolve any dispute including any claim that all or any part of the Terms & Conditions, including this provision, are unenforceable.

---

[3] "The issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and oblige was ever concluded." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n. 1 (2006). For example, Turner argues both (1) that she never assented to the arbitration agreement and (2) that the agreement is unconscionable. The existence of the agreement is an issue that the Court must decide before enforcing the agreement. If the Court determines that an agreement exists, then the issue of whether it is unconscionable and therefore invalid will be determined by the arbitrator pursuant to the Delegation Clause.

[4] At this time, the Court assumes that the language presented by PillPack is an accurate representation of the language contained in the Terms & Conditions when Turner allegedly assented to them. If this language is found to be inaccurate, either at trial or otherwise, then additional analysis on the issue of the Delegation Clause will be necessary.

(R. 34-1 at 12). This language constitutes 'clear and unmistakable' evidence of an agreement to arbitrate arbitrability. *See, e.g.*, *Rent-A-Center*, 561 U.S. at 69 (finding that the following language: "[t]he Arbitrator shall have exclusive authority to resolve any dispute relating to the enforceability . . . of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable" constitutes 'clear and unmistakable' evidence of an agreement to arbitrate arbitrability). The second sentence of the provision contains clear language delegating authority of arbitrability issues to the arbitrator. The first sentence establishes that the parties under that contract will arbitrate disputes in accordance with the "current [American Arbitration Association] Commercial Arbitration Rules." "The rules of the American Arbitration Association provide that arbitrators have the power to resolve arbitrability questions." *Henry Schein*, 139 S.Ct. at 528. When parties agree to settle claims related to a contract according to the rules of the AAA, "they provide a 'clear and unmistakable' delegation of scope-determining authority to an arbitrator" because the AAA rules "provide[] that 'the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the . . . scope . . . of the arbitration agreement." *Bowden v. Delta T Corp.*, 2006 U.S. Dist. LEXIS 85724, at *20 (E.D. Ky. Nov. 27, 2006) (quoting *Sleeper Farms v. Agway, Inc.*, 211 F. Supp. 2d 197, 200 (D. Me. 2002) (quoting *Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. Medpartners, Inc.*, 203 F.R.D. 677, 685 (S.D. Fla. 2001)) (other internal citations omitted)); *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (stating that when parties agree to arbitrate "in accordance with the Commercial Arbitration Rules of the American Arbitration Association[,]" that agreement "serves as clear and unmistakeable [sic] evidence of the parties' intent to delegate" issues of scope and validity to the arbitrator."); *Avue Techs. Corp. v. DCI Group, L.L.C.*, 2006 U.S. Dist. LEXIS 24513, at * 14-22 (D.D.C. Apr. 28, 2006) (holding that when plaintiff signed a contract that explicitly incorporated

AAA rules, it agreed to let the arbitrator decide the issue of which claims fell within the scope of the arbitration clause); *Book Depot P'ship v. Am. Book Co.,* 2005 U.S. Dist. LEXIS 33782, at *8-9 (E.D. Tenn. June 24, 2005) (noting that a "significant majority of courts" have held that incorporating arbitration rules into an arbitrations, such as those of the AAA, which themselves empower an arbitrator to decide issues of arbitrability, the incorporation serves the "clear and unmistakable" delegation, citing *Contec,* 398 F.3d at 208, and assuming the Sixth Circuit would "join in this emerging line of authority."). In fact—although PillPack argues in its motion that the agreement is subject to the Delegation Clause (R. 34 at 22 n. 5)—Turner does not address the Delegation Clause in her response.

If Turner assented to the arbitration agreement as PillPack alleges, then she also assented to the Delegation Clause contained therein. "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract." *Henry Schein*, 139 S.Ct. at 529. "In those circumstances, a court possesses no power to decide the arbitrability issue." *Id.* Therefore, if the jury trial finds that Turner assented to the contract, then all of the remaining issues raised in PillPack's motion to compel arbitration, Turner's response, and the reply will be decided by the arbitrator. This includes the issue of whether PillPack, who is a nonsignatory to the alleged agreement, can nevertheless enforce the arbitration agreement under an estoppel theory or as a third-party beneficiary. *Doe #1 v. Déjà Vu Consulting, Inc.*, No. 3:17-CV-00040, 2017 WL 3837730, *17 (M.D. Tenn. September 1, 2017) ("[T]he court notes that it appears that this too, is a matter that may be and—given the breadth of the Delegation Clause in the Arbitration Provision here—likely has been effectively delegated to the arbitrator to decide); *Accord Contec Corp.*, 398 F.3d at 209 (holding that the issue of whether the signatory was estopped from avoiding arbitration with a nonsignatory was effectively delegated in the arbitration agreement).

# ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED,** the Court will set this matter for trial during the telephonic conference set for **June 6, 2019 at 9:45 a.m. Central Time**. (*See* R. 48). The Court shall defer ruling on the pending motions in this case until the conclusion of the trial, and **all other litigation in this matter is stayed until such time**. The parties may only conduct discovery on the issue of the formation of the alleged arbitration agreement. **IT IS SO ORDERED.**

**Thomas B. Russell, Senior Judge**
**United States District Court**

May 29, 2019

CC: Counsel of Record